# FILED

April 17 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0621

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 82

THOMAS J. KRAJACICH, PH.D.,
MARK H. JOHNSON, PH.D. and
RENNAE I. JOHNSON, PH.D.,

      Plaintiffs and Appellants,

   v.

GREAT FALLS CLINIC, LLP,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDV 10-1003
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Alexander (Zander) Blewett, III; Hoyt & Blewett PLLC; Great Falls,
Montana

      For Appellee:

            Jon J. Kudrna; Jardine, Stephenson, Blewett & Weaver, P.C.;
Great Falls, Montana

Submitted on Briefs:  March 7, 2012

Decided:  April 17, 2012

Filed:

_____
                          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     The Eighth Judicial District Court, Cascade County, granted summary judgment to the Appellee, Great Falls Clinic, LLP (Clinic), and denied summary judgment for Appellants ("Appellants" or "psychologists"). We affirm and address the following issues:

¶2     *I. Did the District Court err by holding that the Appellants engage in the "practice of medicine" as used in the parties' partnership agreement?*

¶3     *II. Did the District Court err by concluding there were no issues of material fact in determining the parties' intention regarding the term "practice of medicine?"*

### FACTUAL AND PROCEDURAL BACKGROUND

¶4     The Clinic is a Montana general limited liability partnership comprised of medical professionals. Appellants Thomas J. Krajacich, Mark Johnson, and Rennae Johnson are three licensed clinical psychologists who were former partners in the Clinic.

¶5     The Clinic has been operating in Great Falls since 1916, and its partners have worked under various partnership agreements. In August 2004, the Clinic partners, including Appellants, signed a "Restated Partnership Agreement" (Agreement), effective August 25, 2004. Central to this dispute are Articles 6.1 and 6.2(b) of the Agreement. Article 6.1 provides that a partner who separates from the partnership in compliance with the Agreement's terms will receive his or her "Partnership Interest," inclusive of

2

operational profits and capital contributions. However, this payment is subject to a reduction pursuant to Article 6.2(b), which provides:

>  6.2 **Exceptions for Certain Separations**. For Separations and circumstances described below, the payment made to a Partner for the Partner's Partnership Interest will not include payment for the Partner's interest in the Montana Care, Great Falls Surgery Center, and Accounts Receivable accounts and the Partner forfeits and waives any interest in these accounts:
>
> .   .   .
>
>  (b) **Competing After Withdrawal or Retirement**. If a Partner's Separation is pursuant to an Event of Separation . . . and at anytime during the period of three years following his or her Separation the Partner enters into or engages in the *practice of medicine* in the county in which he or she primarily practiced while a Partner or in any contiguous county thereof, . . . the separating Partner shall forfeit all interest whatsoever in the Montana Care, Great Falls Surgery Center, and Accounts Receivable accounts and shall receive no payment whatsoever for his or her interests in said accounts. [Emphasis added.][1]

¶6      The psychologists separated from the Clinic in August 2010 and thereafter filed a declaratory judgment action when the Clinic refused to pay them their full partnership interest payments. They filed a motion for summary judgment which admitted they were "practicing psychologists in Cascade County," but argued that "Article 6.2 of the Agreement places no restriction on any partners practicing psychology anywhere after they separate from the Clinic, but only places a restriction on partners who engage in the

---

[1] This provision of the Agreement was the subject of prior litigation. *See Mungas v. Great Falls Clinic, LLP*, 2009 MT 426, ¶¶ 8-9, 354 Mont. 50, 221 P.3d 1230. The District Court here noted there was no evidence that anyone had questioned the applicability of this provision to psychologists until several years after the 2004 Agreement was signed, and despite the involvement of a psychologist in *Mungas*, Appellants Mark Johnson and Rennae Johnson raised no objection to the provision's applicability until they disassociated from the partnership in 2010.

'practice of medicine.'" The Clinic answered and likewise moved for summary judgment, arguing the psychologists were "practicing in Cascade County the specialty practiced while partners" and that Article 6.2(b) of the Agreement applied to them.[2]

¶7 After a hearing, the District Court granted the Clinic's cross-motion for summary judgment, concluding that Article 6.2(b) of the Agreement, which reduced their partnership interest payment, was applicable to the psychologists. The psychologists appeal.

## STANDARD OF REVIEW

¶8 "We review a district court's rulings on summary judgment de novo, applying the same criteria as the district court under M. R. Civ. P. 56." *Mungas v. Great Falls Clinic, LLP*, 2009 MT 426, ¶ 19, 354 Mont. 50, 221 P.3d 1230 (citing *Paull v. Park Co.*, 2009 MT 321, ¶ 17, 352 Mont. 465, 218 P.3d 1198). "Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Town & Country Foods, Inc. v. City of Bozeman*, 2009 MT 72, ¶ 12, 349 Mont. 453, 203 P.3d 1283 (citations omitted). A material fact is one that concerns the elements of the cause of action or defenses at issue to an extent that requires resolution of the issue by a trier of fact. *Corporate Air v. Edwards Jet Ctr. Mont., Inc.*, 2008 MT 283, ¶ 24, 345 Mont. 336, 190 P.3d 1111 (citation omitted). "The district court's conclusion that no genuine issue of material fact exists and that the moving party

---

[2] The psychologists did not challenge the covenant as lacking a legitimate business interest. *See Wrigg v. Junkermier, Clark, Campanella, Stevens, P.C.*, 2011 MT 290, ¶ 22, 362 Mont. 496, 265 P.3d 646.

4

is entitled to judgment as a matter of law is a conclusion of law which we review for correctness." *Hinderman v. Krivor*, 2010 MT 230, ¶ 13, 358 Mont. 111, 244 P.3d 306 (citation omitted).

**DISCUSSION**

¶9    *I. Did the District Court err by holding that the Appellants engage in the "practice of medicine" as used in the parties' partnership agreement?*

¶10    The District Court determined that the language of the subject provision was not ambiguous and there was no indication the parties intended the term "practice of medicine" to have any meaning other than its common and ordinary usage, which includes the practice of psychology.  Alternatively, the court reasoned that even if the term "practice of medicine" was considered under a technical, statutory definition, the term nonetheless included non-physician psychologists.

¶11    Appellants argue that the District Court erred because they are not engaged in the "practice of medicine."  They argue that "practice of medicine" is a technical term and offer a lengthy statutory analysis to establish that the term applies only to licensed physicians.  However, we conclude that the intention of the Agreement is clear by its own terms, which does not incorporate statutory definitions, and that reference to statute is unnecessary.

¶12    A partnership agreement is "an agreement, written or oral, among the partners concerning the partnership."  Section 35-10-102(6), MCA.  "Montana law provides that when a partnership agreement exists, it controls the rights and duties of partners."  *In re Estate of Bolinger*, 1998 MT 303, ¶ 50, 292 Mont. 97, 971 P.2d 767; *accord* § 35-10-

5

106(1), MCA (except for limitations not applicable here, "a partnership agreement governs relations among the partners and between the partners and the partnership"). "A partnership agreement is essentially a contract between the partners and, therefore, is to be interpreted and applied in accordance with principles of contract law." *Bolinger*, ¶ 54 (citations omitted).

¶13  The interpretation and construction of a contract is a question of law. *Corporate Air*, ¶ 30 (citation omitted). "'A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.'" *Corporate Air*, ¶ 30 (quoting § 28-3-301, MCA). When a contract is in writing, the parties' intentions are to be determined from the writing alone, if possible. *Corporate Air*, ¶ 30 (citing § 28-3-303, MCA); *State ex rel. Mont. Dept. of Transp. v. Asbeck*, 2003 MT 337, ¶ 18, 318 Mont. 431, 80 P.3d 1272 (citation omitted) ("in interpreting a written contract, the intention of the parties is ascertained 'first and foremost' from the writing alone"). "'The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other.'" *Richards v. JTL Group, Inc.*, 2009 MT 173, ¶ 14, 350 Mont. 516, 212 P.3d 264 (quoting § 28-3-202, MCA). "It is [a] well-established principle of contractual construction that in interpreting a written instrument, the court will not isolate certain phrases of the instrument to garner the intent of the parties, but will grasp the instrument by its four corners and in the light of the entire instrument, ascertain the paramount and guiding intent of the parties. Mere isolated tracts, clauses and words will not be allowed

to prevail over the general language utilized in the instrument." *Rumph v. Dale Edwards, Inc.*, 183 Mont. 359, 368, 600 P.2d 163, 168 (1979) (citations omitted); *accord Sandtana, Inc. v. Wallin Ranch Co.*, 2003 MT 329, ¶ 26, 318 Mont. 369, 80 P.3d 1224 (citations omitted). "Particular clauses of a contract are subordinate to its general intent." Section 28-3-307, MCA. Moreover, contract terms that are inconsistent with the general nature of the contract or the primary intention of the parties are to be rejected. Section 28-3-503, MCA; *Rumph*, 183 Mont. at 369, 600 P.2d at 169.

¶14 Article 1.4 of the Agreement states that "[t]he business of the Partnership will be to (i) *provide professional medical services and services ancillary thereto*; (ii) conduct all business and financial activities related or incidental to the foregoing; and (iii) conduct any other legal business or financial activities approved by the Partnership." (Emphasis added.) Article 1.7 defines "Partner" as "a person who has been admitted as a partner in the Partnership as provided in this Agreement, who has agreed in writing to be bound by this Agreement, and with respect to whom an Event of Separation has not occurred." Thus, "partner" is defined as a person, not a physician, and notably, "practice of medicine" is not defined.

¶15 Article 5.5 states that "[a]ll fees or funds resulting from or received by a Partner as payment for the *performance of professional services or professional activities* by such Partner shall accrue and belong to the Partnership." (Emphasis added.) Article 8.4 specifies that "[t]his Agreement shall be *binding upon and inure to the benefit of the parties* hereto, . . . and shall supersede and revoke any prior agreements establishing the

7

Partnership and involving any or all of the parties to this Agreement. . . . The following parties execute the foregoing Restated Partnership Agreement on the date appearing opposite his or her name *intending to be bound* by this Restated Partnership Agreement . . . ." (Emphases added.) Clearly, the Agreement does not differentiate between partners based upon their profession, and by signing the Agreement, the psychologists intended to be bound to the Agreement's terms as partners.

¶16 Appellants argue under Article 1.4, which states that the business of the Partnership is to "provide professional medical services and services ancillary thereto," that "physicians were to provide 'professional medical services,' whereas, the Psychologists would provide 'services ancillary thereto.'" However, this proffered division of labor is of the Appellants' own making. We agree with the District Court that the Agreement itself makes no such distinction between physicians and psychologists. We are bound to interpret an instrument by its terms or substance without inserting or omitting language. Section 1-4-101, MCA.

¶17 Appellants contend that the District Court "was required to interpret the meaning of 'practice of medicine' in its technical sense, because that phrase has been specifically defined in §37-3-102(8), MCA." (Emphasis in original.) However, we reiterate the well-established interpretational principle that "words of a contract are to be understood in their ordinary and popular sense rather than according to their strict legal meaning unless used by the parties in a technical sense or unless a special meaning is given to them by usage, in which case the latter must be followed." Section 28-3-501, MCA;

8

*Dollar Plus Stores, Inc. v. R-Montana Assocs., L.P.*, 2009 MT 164, ¶ 17, 350 Mont. 476, 209 P.3d 216; *SVKV, L.L.C. v. Harding*, 2006 MT 297, ¶ 42, 334 Mont. 395, 148 P.3d 584; *see also Arcadia Fin., Ltd. v. Prestige Toyota*, 1999 MT 273, ¶ 20, 296 Mont. 494, 989 P.2d 831. The term "practice of medicine" is only used in Article 6.2(b) of the Agreement, without any indication that the parties intended to give the term a technical meaning. During the hearing, the District Court asked, "where is an indication on the face of this contract that the parties intended a technical, legal meaning of the term 'practice of medicine' as opposed to the popular meaning of the term?" Counsel answered that the statutes served that purpose, but conceded: "Well, there's nothing in there, from my review, 50 times or whatever it is, except they use the phrase 'practice of medicine.'. . . There isn't anything more than that." *See Asbeck*, ¶ 19 ("There is no reason for the courts to narrow the language of the [agreement] by application of a statutory definition when the parties chose not to do so themselves.").[3]

¶18 The Agreement discusses the medical purposes of the Partnership broadly and generally, as "provid[ing] professional medical services and services ancillary thereto" and the "performance of professional services or professional activities." No exclusions or distinctions among the professions are made by the Agreement. We have previously

---

[3] Appellants also argue that our case law holds the "practice of medicine" or "treating physician" does not include chiropractors, certified registered nurse anesthetists, or psychologists, citing *Weis v. Div. of Workers' Compensation of the Dept. of Lab. and Indus.*, 232 Mont. 218, 755 P.2d 1385 (1988); *Mont. Society of Anesthesiologists v. Mont. Bd. of Nursing*, 2007 MT 290, 339 Mont. 472, 171 P.3d 704; and *EBI/Orion Group v. Blythe*, 281 Mont. 50, 931 P.2d 38 (1997). Appellants also distinguish *State v. Bain*, 130 Mont. 90, 295 P.2d 241 (1956) (holding that a person who practices physiotherapy practices medicine). However, these cases were interpreting statutes and administrative rules, not a contract.

consulted dictionaries to determine the common use and meaning of terms. *Dollar Plus Stores, Inc.*, ¶ 20; *Myers v. Dee*, 2011 MT 244, ¶ 22, 362 Mont. 178, 261 P.3d 1054 (citations omitted). Generally, "practice of medicine" is defined as "[t]he treatment of injuries as well as the discovery of the cause and nature of disease, and the administration of remedies, or the prescribing of treatment therefor." *Black's Law Dictionary* 1055 (5th ed., West 1979). In turn, "treatment" is defined as "[a] broad term covering all the steps taken to effect a cure of an injury or disease; including examination and diagnosis as well as application of remedies." *Black's Law Dictionary* at 1346. The ordinary and common usage of the term "practice of medicine" is thus broad enough to include the practice of psychology.

¶19 Appellants appear to argue that the District Court erred in holding the Agreement language was not ambiguous. Before the District Court and on appeal, Appellants have asserted that the Agreement unambiguously excludes psychologists from the "practice of medicine," but argue the Clinic created an ambiguity by offering the opposite interpretation. However, "'a conclusion of ambiguity is not compelled by the fact that the parties to a document, or their attorneys, have or suggest opposing interpretations of a contract, or even disagree as to whether the contract is reasonably open to just one interpretation.'" *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 20, 338 Mont. 41, 164 P.3d 851 (quoting Richard A. Lord, *Williston on Contracts* vol. 11 § 30:4, at 51-54 (4th ed., West 1999) (footnotes omitted)). "Whether an ambiguity exists in a contract is a matter of law. An ambiguity's existence must be

10

determined on an objective basis." *Richards*, ¶ 26 (citation omitted). An ambiguity exists when the contract language, taken as a whole, could reasonably be given two different meanings. *Richards*, ¶ 26 (citation omitted). We agree with the District Court that the language of the Agreement is unambiguous. "Where the language of a contract is unambiguous—i.e., reasonably susceptible to only one interpretation—the duty of the court is to apply the language as written." *Corporate Air*, ¶ 32 (citation omitted).

¶20     Appellants argue that they did not have equal power to amend the term "practice of medicine" in the Agreement since there were far more Partners who were physicians than psychologists, and offer the proposition that "[n]o party to a contract has a duty to question, challenge or object to the language in an agreement which someone else drafted and which is beneficial to the non-drafter." Appellants cite no specific authority for this proposition, except to distinguish the District Court's citation to *Mungas*. M. R. App. P. 12(1)(f) requires a party to cite to relevant authority in support of the party's appellate argument, *Fronk v. Collins*, 2011 MT 315, ¶ 10, 363 Mont. 110, 266 P.3d 1271 (citation omitted), and we decline to consider this argument further.

¶21     After considering the Agreement as a whole, giving effect to every part, and "ascertain[ing] the paramount and guiding intent of the parties" from "the entire instrument," *Rumph*, 183 Mont. at 368, 600 P.2d at 168, we conclude the District Court correctly held that Article 6.2(b) applies to the psychologists.

11

¶22    *II. Did the District Court err by concluding there were no issues of material fact in determining the parties' intention regarding the term "practice of medicine?"*

¶23    Alternatively, Appellants contend that the grant of summary judgment to the Clinic is improper because genuine issues of material fact remain about the intention of the parties regarding the term "practice of medicine." Appellants filed affidavits referencing comments made by certain Clinic professionals that psychologists did not practice medicine and therefore Article 6.2(b) was inapplicable to them. The Clinic offered affidavits from a number of physicians stating their intention was to include the psychologists within the provision.

¶24    "'A material fact is a fact that involves the elements of the cause of action or defenses at issue to an extent that necessitates resolution of the issue by a trier of fact.'" *Corporate Air*, ¶ 24 (citation omitted). Testimony of the parties' intentions regarding the term "practice of medicine" would be material if the Agreement was ambiguous. "It is true that, when a contract term is ambiguous, interpretation of the term involves determining a question of fact regarding the intent of the parties to the contract. The initial determination of whether an ambiguity exists in a contract, however, is a question of law for a court to determine." *Wurl v. Polson Sch. Dist. No. 23*, 2006 MT 8, ¶ 17, 330 Mont. 282, 127 P.3d 436 (citations omitted). However, we have already determined that the disputed language is not ambiguous. Therefore, the interpretation of the Agreement is a question of law rather than fact, and the parties' intentions are to be determined from the writing alone, if possible. Section 28-3-303, MCA. Here, as in *Baker Revocable Trust*, ¶¶ 77-79, the disputed phrase is clear, explicit, and does not involve an absurdity.

12

The intention of the parties can be gleaned from the language alone. Consequently, there is no genuine issue of material fact as to the meaning of the phrase "practice of medicine," and the District Court did not err in granting summary judgment to the Clinic.

¶25 Affirmed.

/S/ JIM RICE

We concur:

/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ BETH BAKER

Justice James C. Nelson specially concurs.

¶26 I specially concur in the Court's Opinion. My agreement with our decision, however, is limited to the facts of this case and the particular contract interpretation question at issue. I would not necessarily agree that psychologists engage in the "practice of medicine" in other contexts, given the differing statutory schemes which apply to physicians and to psychologists.

¶27 With that caveat, I specially concur.

/S/ JAMES C. NELSON