Justice Beth Baker delivered the Opinion of the Court.
***193 ¶ 1 Chad Jackson appeals an order of the Fourth Judicial District Court, Missoula County. The District Court affirmed the Human Rights Commission's decision granting Costco Wholesale Corporation summary *643 judgment and dismissing Jackson's claim of unlawful discrimination in employment on the basis of a disability and failure to make reasonable accommodation. Jackson argues that Costco terminated him for conduct resulting from a disability, which cannot qualify as a legitimate, nondiscriminatory basis for termination. We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶ 2 Jackson began his employment with Costco in its Missoula warehouse store in 1997. Throughout the course of his employment, Jackson requested various accommodations due to his prescribed medication causing sleep interference, and Costco granted him intermittent Family Medical Leave Act (FMLA) leave and excused tardiness. Jackson at no time notified Costco that he had been diagnosed with major depressive disorder and generalized anxiety disorder.
¶ 3 On October 5, 2015, Jackson's psychologist, Dr. Linda Frey, completed an FMLA form requesting excused intermittent tardiness. The description of the relevant medical facts for which he sought this accommodation stated that he "experiences symptoms including fatigue and hypersomnia. Medication prescribed him exacerbates sleep problems in making it very difficult to rouse/awaken." Dr. Frey stated that the need for intermittent tardiness began on October 5, 2015, and was estimated to end in April 2017.
¶ 4 Jackson testified that on October 22, 2015, Austin Crowley, a manager at Costco, asked him how he was feeling. Crowley was not Jackson's supervisor, but he did know him on a personal basis. Jackson informed Crowley that he "was not emotionally and mentally feeling well." Crowley asked if Jackson needed to be excused from work to go home, and Jackson advised that he did. Jackson thinks that he may have mentioned his depression to Crowley "in passing" prior to October 2015, but he has no specific recollection of doing so. On October 31, 2015, Jackson provided a Costco Human Resources officer with a ***194 return-to-work letter from Dr. Frey that stated: "Mr. Jackson experienced difficulties associated with his medical condition and medications this past week. He sought emergency medical treatment on Thursday, October 22[,] 2015. This situation resulted in him missing work from then through October 30, 2015." Dr. Frey also wrote another letter with identical language, except she changed the return date to October 26, 2015.
¶ 5 On October 31, 2015, Jackson returned to work. Denise Parrott, a Costco manager, noticed that he was wearing a "Griz" stocking hat while working in the front of the store as a cashier. Because Costco has a store policy prohibiting employees from wearing hats while working at the cash registers, Parrott asked Jackson to remove the hat. Jackson became agitated and angry and insisted that he could wear a hat when he was cold. Eventually, Jackson took the "Griz" stocking hat back to his locker. He returned to the cash register wearing a "Costco" logo stocking hat. At Parrott's request, another supervisor informed Jackson that he needed to report to the front-end office to speak with Parrott.
¶ 6 When Parrott began to speak with Jackson about wearing a hat, he became angry. She tried to talk to him about the store policy, but Jackson yelled at her, refused to sit down, and used profanity. Jackson claims that he did not "yell" at Parrott but admits that his voice was "elevated." Parrott radioed Wayne Rhoades, Assistant Warehouse Manager, for assistance because she was frightened by Jackson's behavior. Jackson was leaving as Rhoades arrived, and the two physically bumped into one another. Rhoades stated that Jackson was extremely agitated and upset. Rhoades had to ask Jackson several times to return to the office so that they could discuss the issue, and Jackson eventually agreed.
¶ 7 Back in the front-end office, Rhoades asked Jackson several times to sit down. Rhoades told him that he was being disruptive and insubordinate, and Jackson ultimately sat down. When Rhoades asked Parrott to tell him what had occurred, she started to speak but Jackson interrupted, pointed at Parrott, and again began yelling. Rhoades managed to get Jackson to calm down; when Parrott began to speak again, however, Jackson *644 began yelling at her and pointing his finger at her. Eventually, Rhoades concluded the meeting because Jackson could not compose himself appropriately to continue the discussion. Rhoades directed him to retrieve shopping carts in the parking lot for the remainder of his shift.
¶ 8 After the incident, Rhoades consulted with Assistant General Manager Dan Walsh about what had occurred. Rhoades and Walsh ***195 then met with General Manager Stacey Jimenez to review the incident. Rhoades, Walsh, and Jimenez concluded that Jackson needed to be placed on a three-day suspension while Costco decided whether to terminate his employment for insubordination. Costco's Employee Agreement, which Jackson signed and acknowledged that he received, describes employee conduct that may result in termination. It lists, among other behaviors, "Insubordinate conduct including, but not limited to: a. Refusal to comply with the direct instructions or directions of your Supervisor." At the end of Jackson's October 31 shift, Rhoades and Walsh met with Jackson to advise him of his suspension. Rhoades stated that Jackson became extremely angry, used profanity, walked out of the office, and slammed the office door so hard that he knocked a cork board off the wall. Jackson does not recall using profanity but concedes that he slammed the door hard enough to knock the cork board off the wall.
¶ 9 Before Costco will terminate an employee who has worked with the company for more than five years, the circumstances must be reviewed with an Executive Vice President or above. After Jackson's suspension, three senior management members reviewed whether to terminate his employment: Michael Hayes, Vice President of Northwest Operations II; Mario Omoss, Senior Vice President, Northwest Region; and John McKay, Chief Operating Officer of the Northern Division. They agreed that Jackson's conduct was unacceptable, insubordinate, and violated the Employee Agreement. On November 6, 2015, McKay decided to terminate Jackson's employment and informed the others of his decision via an e-mail the same day.
¶ 10 On November 8, 2015, Jimenez and Rhoades met with Jackson to inform him of his termination. At the outset of the meeting, Jackson apologized for his behavior during the October 31 meetings and stated that his conduct was a result of his depression and anxiety disorders. The November 8 meeting was the first time that Jackson had told Costco about his depression and anxiety. Jimenez and Rhoades advised Jackson that he was being terminated. They met again on November 12, 2015, to sign a termination notice. After the November 8 meeting, Jackson provided Costco with a letter from his psychiatrist, Dr. John Willoughby, stating that when Jackson had discontinued his medications it resulted in a "mental health decompensation" and that, if Jackson continued to be compliant with medications, "the likelihood of future confrontations and decompensation is be [sic] small."
¶ 11 After his termination, Jackson filed a complaint with the Montana Human Rights Bureau alleging that Costco discriminated against him ***196 by terminating him from employment because of his disability. He stated that he has a disability as defined in the Montana Human Rights Act (MHRA) and the Americans with Disabilities Act (ADA). Jackson further alleged that Costco discriminated against him by failing to make reasonable accommodations for his disability. The reasonable accommodation that Jackson sought was for Costco to allow him to keep his job after reviewing his medical records. Costco moved for summary judgment, claiming it had a legitimate business reason for discharging Jackson. Jackson opposed the motion.
¶ 12 The matter came before a Hearing Officer, who held that Costco established a legitimate, nondiscriminatory reason for terminating Jackson and that Jackson did not present evidence raising an inference that Costco's reason for termination was a pretext. Concluding that Jackson "did not establish a material and substantial genuine fact issue," the Hearing Officer granted summary judgment in favor of Costco. Jackson appealed to the Commission. After review of the complete record, the Commission determined that viewing the facts in the light most favorable *645 to Jackson supported the conclusion that discrimination did not occur. The Commission affirmed the Hearing Officer's order and adopted the order granting Costco's motion for summary judgment as part of its final agency decision. Jackson appealed to the District Court.
¶ 13 Following briefing and oral argument, the District Court affirmed the Final Agency Decision of the Commission and adopted the order granting Costco's motion for summary judgment.
STANDARDS OF REVIEW
¶ 14 A court reviews a final decision of the Human Rights Commission to determine whether the agency's findings are clearly erroneous and whether its interpretation and application of the law are correct. Denke v. Shoemaker , 2008 MT 418, ¶ 39, 347 Mont. 322, 198 P.3d 284 ; see § 2-4-704(2), MCA. This Court employs the same standards when reviewing a district court's order affirming or reversing the Commission's decision. Denke , ¶ 39. We consider summary judgment pursuant to M. R. Civ. P. 56, and we review the decisions of the Hearing Examiner, the Human Rights Commission, and the district court de novo. Missoula Elec. Coop. v. Jon Cruson, Inc. , 2016 MT 267, ¶ 15, 385 Mont. 200, 383 P.3d 210.
DISCUSSION
¶ 15 Jackson argues that Costco was not entitled to summary judgment because his conduct on October 31 should have been considered a ***197 result of his disability and cannot qualify as a legitimate, nondiscriminatory reason for terminating his employment.
¶ 16 A specific analytic framework, known as the "McDonnell Douglas" test, governs summary judgment motions in discrimination cases. McDonnell Douglas Corp. v. Green , 411 U.S. 792, 802, 804, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973). First, the employee must allege a prima facie case of discrimination in the complaint. Heiat v. E. Mont. Coll. , 275 Mont. 322, 328, 912 P.2d 787, 791 (1996). Second, the employer seeking summary judgment must come forward with a legitimate, nondiscriminatory reason for its action. Heiat , 275 Mont. at 328, 912 P.2d at 791. If the employer sets forth a legitimate, nondiscriminatory reason for its action, the employee must produce evidence that establishes a prima facie case and evidence that raises an inference the proffered reason is pretextual. Heiat , 275 Mont. at 328, 912 P.2d at 791.
¶ 17 Costco concedes that Jackson alleged a prima facie case of discrimination in his complaint to the Human Rights Bureau. And Jackson does not argue that Costco's reason was a pretext for discrimination. The only issue in contention is thus whether Costco has come forward with a legitimate, nondiscriminatory reason for terminating Jackson.
¶ 18 Jackson relies on Dark v. Curry County , 451 F.3d 1078, 1084 (9th Cir. 2006), to argue that "conduct resulting from a disability is considered to be part of the disability rather than a separate basis for termination and, as a matter of law, cannot qualify as a legitimate, nondiscriminatory reason for termination." (Internal quotations and citations omitted.) Costco counters in part that Dark and the other cases Jackson cites all involve an employer who had knowledge of the employee's disability prior to termination. Costco maintains that it did not have knowledge of Jackson's disability until after the decision to terminate him was made; Dark and its progeny therefore are not applicable.
¶ 19 It is unlawful, discriminatory practice for an employer to "fail to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified employee." Admin. R. M. 24.9.606(1)(a) (2017). Because the MHRA is modeled on federal anti-discrimination laws, such as the ADA, we find it useful and appropriate to consider federal statutes, regulations, and caselaw as persuasive authority when interpreting provisions of the MHRA. McDonald v. Dep't of Envtl. Quality , 2009 MT 209, ¶ 39 n.4, 351 Mont. 243, 214 P.3d 749. We also have consulted the Equal Employment Opportunity Commission (EEOC) interpretive guidelines in construing ***198 Montana's discrimination laws. *646 BNSF Ry. v. Feit , 2012 MT 147, ¶ 9, 365 Mont. 359, 281 P.3d 225.
¶ 20 An employer must know about a disability before it can intentionally discriminate against an employee based on that disability. Morisky v. Broward County , 80 F.3d 445, 448 (11th Cir. 1996) (no relief under the ADA when prospective employer had no actual knowledge of applicant's disability); Miller v. Nat'l Cas. Co. , 61 F.3d 627, 629 (8th Cir. 1995) (no recovery under the ADA when employer did not know that employee had a manic-depressive condition). The Seventh Circuit found it to be "intuitively clear" when viewing the ADA's language in a straightforward manner "that an employer cannot fire an employee 'because of' a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee 'because of' some other reason." Hedberg v. Ind. Bell Tel. Co. , 47 F.3d 928, 932 (7th Cir. 1995). An employer has a duty to reasonably "accommodate an employee's disability if the disability is obvious-which is to say, if the employer knew or reasonably should have known that the employee was disabled." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008).
¶ 21 The Interpretive Guidance on Title I of the ADA also states that "an employer [is not] expected to accommodate disabilities of which it is unaware." 29 C.F.R. app. § 1630.9 (2017). Generally "it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed." 29 C.F.R. app. § 1630.9. The employer, however, should initiate the reasonable accommodation interactive process if the employer knows or has reason to know that the employee has a disability and is experiencing workplace problems because of the disability. Equal Emp't Opportunity Comm'n, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (Oct. 17, 2002) https://perma.cc/AH3J-ZD4J; 29 C.F.R. app. § 1630.9 ; see 29 C.F.R. § 1630.2(o)(iii)(3). The employee need only inform the employer of a need for an adjustment due to a medical condition using "plain English"; she need not mention the ADA or use the language "reasonable accommodation." Barnett v. U.S. Air, Inc. , 228 F.3d 1105, 1112 (9th Cir. 2000), vacated on other grounds , 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002) ; Equal Emp't Opportunity Comm'n, EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities (Mar. 25, 1997), https://perma.cc/49BF-JQ92. The EEOC suggests that if an employee requests time off because he is "depressed and stressed," being "depressed and stressed" may be "plain English"
***199 for a medical condition requiring a reasonable accommodation. Equal Emp't Opportunity Comm'n, EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities, supra .
¶ 22 Costco's policy in the Employee Agreement, which Jackson signed and acknowledged receiving, informed employees of its intent to provide reasonable accommodation to employees with disabilities. The policy advised employees with a disability that affects job performance to "let [Costco] know as soon as possible" to begin the interactive process. When Costco made the decision to terminate Jackson, it was unaware that he had been diagnosed with depression or anxiety. Jackson had never requested a reasonable accommodation for such a condition. Jackson's previous intermittent FMLA leave and Costco's express permission for his occasional tardiness were for diagnosed sleep problems. There was nothing, in plain language or otherwise, to notify Costco that Jackson had depression and anxiety and was requesting reasonable accommodation for those conditions. Jackson argues that Costco should have known that he had a disability and required reasonable accommodation when he had been granted FMLA leave in the past. But Jackson's psychologist, Dr. Frey, had just written two letters to Costco that gave no indication of a need for accommodation. Dr. Frey advised that Jackson had difficulties from a medical condition the week prior to his October 31 return. Her letters did not state that Jackson needed a reasonable accommodation when he returned to work. What's more, during the Human Rights proceedings, Dr. Frey testified that Jackson was able to return to work without the need of any assistance or accommodation *647 from Costco; she, in fact, "absolutely" encouraged him to get back to work and into his regular schedule.
¶ 23 The Hearing Examiner did not err in concluding that Jackson failed to raise an issue of material fact with evidence of his October 22 conversation with Crowley, a Costco manager. When Crowley asked Jackson how he was feeling, Jackson responded that he was "emotionally and mentally not feeling well," and he decided to go home for the day. A general expression of feeling "unwell" is not plain language of a medical disability that would put an employer on notice that the employee needs a reasonable accommodation. Jackson testified at his deposition that he was "emotionally distraught, very depressed, and couldn't control [his] emotions," but the words he acknowledged using with Crowley were "not feeling well." Dr. Frey's return-to-work letters immediately followed Jackson's absence. Until the November 8 meeting, when Jackson told his supervisors his depression and anxiety caused his behavior on October 31, Costco did ***200 not know that Jackson had a disability. Costco had accommodated Jackson's sleep troubles, but it had no reason to associate those issues with his explosive behavior on October 31. The Hearing Officer and Commission properly concluded that Costco could not have discriminated against Jackson for his disability because the company was not aware of it when the decision to terminate him occurred. Dark and its progeny therefore do not supply persuasive authority; those cases all involved employers with actual knowledge. See Dark , 451 F.3d at 1081.
¶ 24 Jackson was suspended on October 31, and Costco management decided to terminate his employment on November 6. Jackson did not mention his depression and anxiety until the November 8 meeting. If an employee mentions a disability and/or the need for an accommodation for the first time in response to discipline for unacceptable conduct and the appropriate disciplinary action is termination, the employer need not further discuss the employee's disability or request for reasonable accommodation. Equal Emp't Opportunity Comm'n, The Americans with Disabilities Act: Applying Performance and Conduct Standards to Employees with Disabilities (Dec. 20, 2017), https://perma.cc/8PLE-KWAU. Jackson argues that he was not terminated by Costco until November 12, 2015, when he met with Jimenez and Rhoades and signed his termination notice, and that his termination occurred four days after the meeting during which he discussed how his disability had caused his behavior. The record reflects, however, that McKay notified other members of Costco's senior management of his decision to terminate Jackson on November 6. And Jackson mentioned his disability for the first time on November 8 when his supervisors met to tell him he was being terminated. The Hearing Officer properly concluded that the decision to terminate Jackson was reached without knowledge of his mental condition or disability, and Costco was not under any obligation to revisit that decision.
¶ 25 As the employer seeking summary judgment, Costco presented a legitimate, nondiscriminatory reason for the termination. Jackson does not appear to contest the Hearing Officer's conclusion that, absent discrimination, Costco had a legitimate business reason for terminating his employment. A legitimate business reason is one that is "neither false, whimsical, arbitrary or capricious, and [it] must have some logical relationship to the needs of the business." Baumgart v. State , 2014 MT 194, ¶ 35, 376 Mont. 1, 332 P.3d 225 (internal citation omitted). Violation of an employer's written policies is good cause to terminate an employee.
***201 Fenger v. Flathead County , 277 Mont. 507, 513, 922 P.2d 1183, 1186 (1996).
¶ 26 The 2013 Costco Employee Agreement that Jackson signed lists as just cause for termination: "Refusal to comply with the direct instructions or directions of your Supervisor." The EEOC guidance recognizes that an employer may prohibit insubordination toward supervisors and managers. Equal Emp't Opportunity Comm'n, The Americans with Disabilities Act: Applying Performance and Conduct Standards to Employees with Disabilities , supra . Jackson refused to comply with Parrott's directions to remove his hat while working as a cashier and then refused to cooperate when she attempted to *648 discuss it with him. The Hearing Officer and Commission did not err in concluding that Costco acted within its written policies and the law when it terminated Jackson for insubordination.
CONCLUSION
¶ 27 Because Costco rebutted Jackson's prima facie case of discrimination with evidence that it terminated his employment for legitimate business reasons that admittedly were not a pretext for discrimination, the District Court did not err in affirming the Commission's grant of summary judgment in favor of Costco. We affirm.
We Concur:
MIKE McGRATH, C.J.
JIM RICE, J.
LAURIE McKINNON, J.
INGRID GUSTAFSON, J.