FILED

07/18/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0531

DA 22-0531

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 139

VICTORY INSURANCE COMPANY,

      Petitioner and Appellant,

  v.

TROY DOWNING, MONTANA STATE AUDITOR,
COMMISSIONER OF INSURANCE AND SECURITIES,

      Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDV-2021-1089
Honorable Christopher D. Abbott, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Linda M. Deola, Scott Peterson, Morrison, Sherwood, Wilson & Deola,
            PLLP, Helena, Montana

      For Appellee:

            Kirsten K. Madsen, Commissioner of Securities & Insurance, Office of the
            Montana State Auditor, Helena, Montana

Submitted on Briefs:  May 24, 2023

Decided:  July 18, 2023

Filed:

                            _____
                                    Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Victory Insurance Company appeals the First Judicial District Court's denial of a writ of prohibition of administrative proceedings initiated by the Montana Commissioner of Securities and Insurance.  The District Court concluded that: (1) the Commissioner's proceedings against Victory were within the agency's jurisdiction because they concerned Insurance Code violations; (2) Victory had a plain, speedy, and adequate remedy at law; and (3) the Commissioner's proceedings were not issue-precluded by a federal court action between Victory and its contracting partner, Clear Spring Property and Casualty Company.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     Victory is an insurance company based in Miles City, Montana.  In 2019, Victory contracted with Clear Spring—a national insurer—to serve as Clear Spring's managing general agent (MGA) for Clear Spring's workers' compensation policies in Montana.  Their contract stated that records relevant to those policies were to "remain at all times the sole property of Clear Spring."  The contract also stated that, upon termination, Victory would turn over all MGA records to Clear Spring and Clear Spring would pay Victory a reasonable negotiated fee to cooperate with any successor MGA in an orderly transfer of all functions.  The contract did not specify the format in which the MGA records would need to be turned over to Clear Spring.  Throughout 2020, Montanans purchased Clear

2

Spring workers' compensation policies through Victory, and Victory administered claims made on those policies.

¶3      Clear Spring sent a termination notice to Victory in February 2021 and, one month later, filed an action in the United States District Court for the Northern District of Illinois, Eastern Division, alleging Victory's breach of contract.  Victory filed an answer and counterclaim.  In August 2021, Clear Spring asked the federal court for a preliminary injunction requiring Victory to provide Clear Spring with all data necessary to transfer administration to a successor MGA.  Victory objected to the request, arguing that it already had transferred all data to Clear Spring in the form of Microsoft Excel spreadsheets, PDF (Portable Document Format) files, Microsoft Word documents, Microsoft PowerPoint slides, JPEG (Joint Photographic Experts Group) images, and Microsoft Outlook e-mails. Clear Spring clarified that it had received overwhelmingly PDF files and requested, where possible, the data instead be sent in .csv (comma separated values) files or native formats such that the tabular data was plain text and could be moved between different software programs to prevent excessive data-entry labor costs.  Victory contended that Clear Spring's request for records in this different format was an attempt to access Victory's proprietary software.

¶4      On October 1, 2021, the federal court declined to issue the preliminary injunction. The court reasoned that although the parties' contract was silent on format, other provisions in the contract and sections of the Montana Insurance Code (including §§ 33-2-1602(4) and 33-17-611, MCA) indicated that the parties intended for Victory to transfer the records

to Clear Spring in a "usable" format. The court found no clear evidence that the data Victory had provided was unusable to Clear Spring. The court accordingly declined the injunction and decided that the format dispute was one best left for the discovery process, which was being supervised by a magistrate judge. In April 2022, the parties jointly stipulated to dismiss the federal litigation with prejudice.

¶5 In the middle of this federal litigation, Clear Spring informed the Commissioner that Victory had not responded to its repeated requests for a full transfer of the MGA data. In August 2021, the Commissioner notified the parties that the agency was considering action to protect the interests of insured Montanans and requested weekly updates on the status of the data transfer. Given ensuing disparate accounts from the parties, the Commissioner issued a letter on September 3, 2021, demanding that Victory send the Commissioner its MGA records, specifically all data elements Clear Spring previously identified. The Commissioner cited § 33-2-1602(4), MCA, which requires that MGA contracts include a provision granting the Commissioner "access to all books, bank accounts, and records of the managing general agent in a form usable to the commissioner." The Commissioner's September 3 letter clarified that a "usable" form was .csv files but that the Commissioner would accept other file types when the native format was not conducive to a .csv file, such as data retained only in a PDF file. Victory sent two large sets of files to the Commissioner—all as PDF files despite clear indications to the Commissioner that Victory's rate, claim, and policy data were originally in .csv or similar formats.

4

¶6 Upon Victory's refusal to provide the data in the form requested, the Commissioner issued a Notice of Proposed Agency Action and Opportunity for Hearing (Notice). The Commissioner alleged that Victory violated various provisions of the Insurance Code, including the requirements to provide the Commissioner access to all MGA records "in a form usable to the commissioner," § 33-2-1602(4), MCA; that MGAs have business entity producer licenses, § 33-2-1601(1), MCA; and that all claims files are joint property of an insurer and an MGA, § 33-2-1602(8), MCA. The Commissioner proposed ordering that Victory pay $25,000 per violation and reimburse Clear Spring for any losses incurred due to Victory's violations. The Commissioner eventually withdrew the alleged licensing violation. Before the Commissioner issued a decision on the remaining alleged violations, Victory filed for a writ of prohibition to halt the proceedings. The District Court denied the writ.

## STANDARD OF REVIEW

¶7 "A district court's decision to issue or deny a writ of prohibition is a conclusion of law regarding the application of a statute, which we review for correctness." *Allied Waste Servs. of N. Am., LLC v. Mont. Dep't of Pub. Serv. Regulation*, 2019 MT 199, ¶ 12, 397 Mont. 85, 447 P.3d 463.

## DISCUSSION

¶8 *Issue One: Were the administrative proceedings in this case within the Commissioner's jurisdiction?*

5

¶9 Victory argues that the Commissioner exceeded his agency's jurisdiction by using administrative authority to pursue Clear Spring's breach of contract claims and thus a writ of prohibition was warranted. To support this argument, Victory points to the Commissioner's Notice, which Victory says parrots Clear Spring's allegations in the federal action. The Commissioner responds that Victory "conflates the regulatory action against it by a governmental agency with a separate civil breach of contract action against it by a private insurance company . . . ."

¶10 A writ of prohibition "arrests the proceedings of any tribunal, corporation, board, or person exercising judicial functions when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person." Section 27-27-101, MCA. District courts may issue such writs "in all cases in which there is not a plain, speedy, and adequate remedy in the ordinary course of law." Section 27-27-102, MCA. Courts are not to grant writs of prohibition "unless the party seeking the writ demonstrates that the proceedings are clearly unlawful." *Bitterroot River Prot. Ass'n v. Bitterroot Conservation Dist.*, 2002 MT 66, ¶ 9, 309 Mont. 207, 45 P.3d 24. Therefore, in order for the District Court to have granted a writ of prohibition in this case, it would have needed to conclude that the Commissioner's action alleging Insurance Code violations was clearly outside the agency's authority and that Victory had no remedy of appeal. The District Court declined to reach that conclusion, as do we.

¶11 The bounds of the Commissioner's functions are defined by the Montana Insurance Code, found in Title 33 of the Montana Code Annotated. *See Mont. Soc'y of*

*Anesthesiologists v. Mont. Bd. of Nursing*, 2007 MT 290, ¶ 43, 339 Mont. 472, 171 P.3d 704 ("An administrative agency can exercise only those powers specifically conferred on it by the Legislature."). Title 33 provides that the Commissioner shall enforce applicable laws and may conduct "investigations of insurance matters . . . to determine whether any person has violated any provision of the laws of this state . . . ." Sections 33-1-311(1), (4), MCA; *see also* § 33-1-311(3) ("[T]he commissioner shall administer the department to ensure that the interests of insurance consumers are protected."); § 33-1-701(1), MCA ("The commissioner may hold hearings for any purpose within the scope of this code considered necessary."); and § 33-1-317, MCA (allowing the commissioner to impose fines upon persons found to have violated a provision of the Insurance Code). Chapter 2 of Title 33 contains Montana's numerous regulations of insurance companies, including Part 16, which addresses the regulation of MGAs. Relevant to this case is the regulation that all MGA contracts contain the following provision:

> Separate records of business written by the managing general agent must be maintained. The insurer has access to and may copy all accounts and records that are related to its business, in a form usable by the insurer. *The commissioner has access to all books, bank accounts, and records of the managing general agent in a form usable to the commissioner.* . . .

Section 33-2-1602(4), MCA (emphasis added). Victory and Clear Spring's MGA contract did not contain a provision allowing the Commissioner access to MGA records in a form usable to the Commissioner.

¶12    After the dispute between Victory and Clear Spring, the Commissioner invoked his agency's authority under Title 33 to initiate an investigation. Citing §§ 33-1-311 and

7

33-2-1602(4), MCA, the Commissioner requested that Victory allow the Commissioner access to Victory's MGA data in a "usable" form. The Commissioner initiated an administrative action when Victory provided data in a form deemed unusable by the Commissioner. The action alleged various violations of Title 33, including § 33-2-1602(4), MCA. The action thus was within the Commissioner's authorized quasi-judicial statutory functions.

¶13 A writ of prohibition additionally was inappropriate because Victory had (and still has) a plain remedy at law through the Montana Administrative Procedures Act. *See* § 2-4-702(1), MCA ("[A] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final written decision in a contested case is entitled to judicial review under this chapter."); § 33-1-711(1), MCA ("[A]n appeal of the commissioner's order must be filed with the district court in Lewis and Clark County pursuant to the procedures provided for in Title 2, chapter 4, part 7.").

¶14 Despite Victory's repeated assertions otherwise, the Commissioner cannot be said to have been adjudicating a breach of contract dispute between Clear Spring and Victory. Section 33-2-1602(4), MCA, contains two separate data-access requirements: one allowing the insurer data access in a form usable by the insurer and one allowing the Commissioner data access in a form usable to the Commissioner. We agree with the District Court and the Commissioner that the Commissioner's action raises a question of statutory interpretation—the meaning of data "usable" to the Commissioner. To the extent the Commissioner referred to Clear Spring's federal breach of contract action in the Notice,

such references provided context and background. The Commissioner asserted claims under the Insurance Code, not a breach of contract claim on behalf of Clear Spring. Because Montana's MGA regulations prescribe specific provisions for contracts between MGAs and insurers, the Commissioner's actions enforcing MGA regulations may well parallel a private breach of contract claim by an insurer. The two legal claims arising from Victory's actions nonetheless are distinct—one regulatory in nature and one a private contractual dispute.

¶15 In support of its argument, Victory cites our decision in *Schuster v. Northwestern Energy Co.*, 2013 MT 364, 373 Mont. 54, 314 P.3d 650. In that case, we held that the Montana Public Service Commission (PSC) was not vested with judicial powers and thus had no authority to award monetary damages to a customer whose injury was caused by the utility's alleged negligence. *Schuster*, ¶ 13. We noted that if the PSC determined that the utility had acted in violation of administrative rules, then it could take action for that violation. *Schuster*, ¶ 14. Victory cites *Schuster* to support the proposition that administrative agencies are not authorized to arbitrate controversies between private parties. But the Commissioner here—unlike the PSC in *Schuster*—acted within the authority vested by the Legislature when it brought an enforcement action under the Insurance Code and sought fines in addition to reimbursement for Clear Spring. *See* § 33-1-317, MCA ("The commissioner may, after having conducted a hearing . . ., impose a fine not to exceed the sum of $25,000 upon a person found to have violated a provision of this code . . . ."); § 33-2-1605(1)(c), MCA ("If, after a hearing . . ., the commissioner

9

finds that a person has violated any provision of this part, the commissioner may order . . . the managing general agent to reimburse the insurer . . . for any losses incurred by the insurer caused by a violation of this part committed by the managing general agent.").

¶16 The District Court correctly applied the law when it denied Victory's writ of prohibition because the Commissioner's action to enforce the Insurance Code was within the agency's jurisdiction and Victory had a plain, speedy, and adequate remedy of judicial review.

¶17 *Issue Two: Did the federal litigation preclude the Commissioner's administrative proceedings?*

¶18 Similar to its first argument, Victory argues that the District Court should have granted the writ of prohibition because the administrative proceedings were "based upon the identical breach of contract claims made by Clear Spring in the federal litigation" and thus issue-precluded.

¶19 Issue preclusion "bars the reopening of an issue that has been litigated and resolved in a prior suit." *Omimex Can., LTD v. State*, 2015 MT 102, ¶ 13, 378 Mont. 490, 346 P.3d 1125 (citation omitted). It applies when four elements are present: (1) the identical issue raised was previously decided in a prior adjudication; (2) a final judgment on the merits was issued in the prior adjudication; (3) the party against whom issue preclusion is now asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom preclusion is now asserted was afforded a full and fair opportunity to litigate the issue which may be barred. *Omimex*, ¶ 13. We have stated that the "[i]dentity of issues

10

is the most crucial element . . . . The fact that each action arises from the same transaction does not mean that each involve the same issues." *Stanley L. & Carolyn M. Watkins Trust v. Lacosta*, 2004 MT 144, ¶ 28, 321 Mont. 432, 92 P.3d 620 (citation omitted).

¶20   Because the District Court determined that the Commissioner was not adjudicating a breach of contract dispute, it concluded that the federal action did not preclude the Commissioner's action. We agree. The federal action did not resolve the same legal issues the Commissioner raised in the Notice. Although the two proceedings shared factual background, the Notice alleged Insurance Code violations while the federal action alleged private claims for breach of contract. The federal court's denial of the preliminary injunction cited Montana's Insurance Code but did so to reveal the parties' contracting intentions. The federal court did not address, and no party litigated, Victory's failure to comply with the Commissioner's September 3 data access request or Victory's alleged Insurance Code violations. Additionally, the Commissioner was not in privity with Clear Spring; the Commissioner regulates Clear Spring. The two did not have interests sufficiently aligned such that the Commissioner could be said to have been acting as Clear Spring's virtual representative. *See Denturist Ass'n of Mont. v. State*, 2016 MT 119, ¶ 14, 383 Mont. 391, 372 P.3d 466. The District Court correctly refused to grant a writ of prohibition based on issue preclusion.

## CONCLUSION

¶21   The Commissioner's proceedings concerned Victory's violations of the Insurance Code and thus were within the agency's jurisdiction. Victory had a legal remedy because

11

it could appeal the Commissioner's decision in District Court.  Victory's federal litigation with Clear Spring addressing a different legal issue did not have preclusive effect.  The District Court's denial of the writ of prohibition is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE