FILED

05/12/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0511

DA 25-0511

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 100

VICTORY INSURANCE CO.,

Plaintiff and Appellant,

v.

STATE OF MONTANA, COMMISSIONER
OF SECURITIES AND INSURANCE,
MONTANA STATE AUDITOR,

Defendant and Appellee.

APPEAL FROM:     District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV-2024-259-JR
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Linda M. Deola, Scott L. Peterson, Morrison, Sherwood, Wilson & Deola,
PLLP, Helena, Montana

For Appellee:

Patricia Klanke, Drake Law Firm, P.C., Helena, Montana

Kirsten Madsen, Commissioner of Securities & Insurance, Office of the
Montana State Auditor, Helena, Montana

Submitted on Briefs: March 4, 2026

Decided: May 12, 2026

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    The Montana Commissioner of Securities and Insurance initiated administrative proceedings against Victory Insurance Company for three violations of the Montana Insurance Code. The agency granted summary judgment in the Commissioner's favor and fined Victory $25,000 for each violation. The District Court affirmed the final agency decision. We address the following restated issues:

1. *Did the District Court err in affirming the agency's summary judgment ruling that Victory failed to provide its records to the Commissioner in usable form?*

2. *Did the Commissioner act arbitrarily and capriciously when it ordered Victory to pay the Insurance Code's maximum permitted fine?*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    Victory is a Montana insurance company that agreed to serve as a managing general agent for Clear Spring Property and Casualty Company's workers' compensation policies in Montana. After Clear Spring gave Victory notice that it was terminating their agreement, the parties' dispute led to litigation in federal court. In 2021, Clear Spring informed the Commissioner that Victory refused to turn over its managing general agent data, prompting the Commissioner to take administrative action against Victory. The factual background of this case is set forth in *Victory Ins. Co. v. Downing*, 2023 MT 139, 413 Mont. 80, 532 P.3d 850, in which we affirmed the District Court's denial of Victory's petition for writ of prohibition. We provide additional facts below as relevant to this appeal.

2

¶3      The Commissioner wrote to Victory on September 3, 2021, demanding that Victory turn over all records in its possession related to its work as a managing general agent for Clear Spring by September 17, 2021.  The Commissioner specified that "the form of the data that will be useable to CSI is in [comma-separated value (.csv)] files . . . unless its native format is not conducive to a .csv file."  Victory responded with two large sets of files in portable document format (PDF).  These documents purported to show that Victory had transferred the requested data to Clear Spring and to Tristar, the third-party administrator.  Victory also provided the Commissioner an email containing links to access a File Transfer Protocol site to view a sample of the actual files that Victory transferred to Clear Spring and Tristar.  None of the files provided were in .csv format.  Victory claimed that it did not use .csv formatting and that, nonetheless, Clear Spring possessed the documents the Commissioner sought.

¶4      On September 30, 2021, the Commissioner notified Victory that it was pursuing administrative action against Victory for violating the Montana Insurance Code, including its failure to include terms required by § 33-2-1602(4), (8)(c), MCA, in its contract with Clear Spring and its failure to comply with the Commissioner's demands for records.[1]  Victory requested a contested case hearing, and the Commissioner appointed a Hearing Examiner.  In July 2022, the Commissioner moved for summary judgment, arguing that it was entitled to judgment as a matter of law on its claims that Victory violated

_____

[1] The Commissioner also alleged that Victory violated § 33-2-1601, MCA, which requires managing general agents to have business entity producer licenses.  The Commissioner amended its notice of proposed agency action in November 2021 to remove this allegation.

§ 33-2-1602(4), MCA, or § 33-1-311(2), (4), MCA, because (1) Victory refused to provide access to its records or, alternatively, (2) refused to provide access to its records in a usable format.

¶5 The Hearing Examiner heard oral arguments from the parties and, in August 2023, issued its recommended decision granting the Commissioner's motion for summary judgment. The Hearing Examiner concluded that Victory violated § 33-2-1602(4), MCA, as a matter of law because it failed to provide the Commissioner with access to its records in a usable form.[2] Victory appealed the Hearing Examiner's decision to Special Deputy Insurance Commissioner Matthew Cochenour, who affirmed the Hearing Examiner's decision. The Special Deputy Commissioner ordered Victory to pay a $25,000 fine for each of its violations of the Insurance Code.

¶6 Victory petitioned the District Court for judicial review of the final agency decision in April 2024, arguing that (1) the agency's interpretation of § 33-2-1602(4), MCA, was erroneous and (2) the Deputy Commissioner acted arbitrarily and capriciously by imposing the maximum fine permitted by the Insurance Code. The District Court determined that the Commissioner was entitled to summary judgment on its alternate theory that Victory failed to fulfill its request for records. The court affirmed the final agency decision and upheld the fine.

---

[2] The Commissioner also moved for summary judgment with respect to Victory's failure to include the terms required by § 33-2-102(4), (8)(c), MCA, in its contract with Clear Spring. The Hearing Examiner granted the Commissioner's motion, and Victory does not challenge this ruling on appeal.

4

## STANDARDS OF REVIEW

¶7      The Montana Administrative Procedure Act governs courts' review of final agency decisions. *Blaine Cnty. v. Stricker*, 2017 MT 80, ¶ 16, 387 Mont. 202, 394 P.3d 159. Courts may reverse or modify a final agency decision only if, applicable here, the appellant's substantial rights have been prejudiced because the agency's conclusions of law are incorrect or the agency acted arbitrarily and capriciously. Section 2-4-704(2)(a)(iv), (vi), MCA; *see also Jackson v. Costco Wholesale Corp.*, 2018 MT 262, ¶ 14, 393 Mont. 191, 429 P.3d 641.

¶8      We review the agency's and the district court's summary judgment orders de novo, applying M. R. Civ. P. 56. *Jackson*, ¶ 14; *Missoula Elec. Coop. v. Jon Cruson, Inc.*, 2016 MT 267, ¶ 15, 385 Mont. 200, 383 P.3d 210. Summary judgment is proper when the moving party establishes that "there is no genuine issue as to any material fact" and that they are entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). The burden then shifts to the non-moving party to "present material and substantial evidence essential to one or more elements of its case (rather than mere conclusory or speculative statements)." *Farhnow v. E-5 Oilfield Servs.*, 2025 MT 220, ¶ 8, 424 Mont. 229, 577 P.3d 1107 (internal quotations omitted; citation omitted). Courts must draw all reasonable inferences in favor of the non-moving party. *Planned Parenthood of Mont. v. State*, 2025 MT 120, ¶ 10, 422 Mont. 241, 570 P.3d 51.

## DISCUSSION

¶9      *1. Did the District Court err in affirming the agency's summary judgment ruling that Victory failed to provide its records to the Commissioner in usable form?*

¶10 The Commissioner may exercise the powers conferred by the Montana Insurance Code, Title 33 of the Montana Code Annotated. *See Mont. Soc'y of Anesthesiologists v. Mont. Bd. of Nursing*, 2007 MT 290, ¶ 43, 339 Mont. 472, 171 P.3d 704. The Commissioner enforces the Insurance Code and administers the insurance department to protect the interests of Montana's insurance consumers. Section 33-1-311(1)-(3), MCA. The Commissioner has authority to "conduct examinations and investigations of insurance matters . . . to determine whether any person has violated any provisions of the laws of this state or to secure information useful in the lawful administration of any provision." Section 33-1-311(4), MCA.

¶11 Chapter 2, Part 16 of the Insurance Code regulates managing general agents. *See generally* §§ 33-2-1601 through -1605, MCA. Contracts between managing general agents and insurers must contain a provision that the managing general agent will maintain its own separate business records and provide the Commissioner "access to all books, bank accounts, and records of the managing general agent in a form usable to the commissioner." Section 33-2-1602(4), MCA. A managing general agent is subject to penalties if it "fails to maintain records and make them available to the commissioner's staff . . . ." Sections 33-2-1602(4), 33-3-401(5), MCA.

¶12 Victory challenges two aspects of the agency's and the District Court's summary judgment rulings. First, Victory argues that the District Court erred when it relied on the Commissioner's alternative argument that Victory failed to produce the records requested. Victory argues that the court was constrained to the agency's rationale—that Victory failed

to produce records in usable form—and that genuine issues of material fact preclude summary judgment under the District Court's theory. Second, Victory argues that the Hearing Examiner incorrectly interpreted § 33-2-1602(4), MCA.

**The District Court's Summary Judgment Ruling**

¶13 The Hearing Examiner concluded that Victory undisputably violated § 33-2-1602(4), MCA, by failing to provide records in a form usable to the Commissioner. The Hearing Examiner found that although the Commissioner requested the records in .csv format, Victory produced primarily PDF documents and therefore, those records were not in "usable form." Because Victory admittedly and undisputedly failed to produce the records in .csv format, the Hearing Examiner remarked that "[w]ith regard to simply failing to produce the records requested, it is not necessary for the Hearing [Examiner] to reach this issue based on the foregoing dispositive finding." Although the District Court agreed that the Commissioner met its burden of proving that it was entitled to summary judgment, the court affirmed that conclusion based on a theory different from the Hearing Examiner's. The court concluded that Victory violated § 33-2-1602(4), MCA, as a matter of law because Victory failed to fulfill the Commissioner's records request.

¶14 We are not persuaded that the District Court exceeded its authority when it granted summary judgment based on Victory's failure to fulfill the Commissioner's request for records. Section 2-4-704(1), MCA, restricts judicial review of an agency decision to the evidence in the administrative record. In its motion, the Commissioner claimed that it was entitled to summary judgment because Victory either failed to fulfill its records request or

7

failed to provide the records in usable form. The parties presented evidence and arguments regarding both theories to the Hearing Examiner. The Hearing Examiner found that "Victory refused to provide the data access requested by CSI. . . . To the extent it produced records in response to the Commissioner's request, Victory did not produce files in a form usable to the Commissioner." Although the Hearing Examiner found that Victory's failure to produce records in usable form was "the most readily addressed alternative basis for summary judgment," he considered both theories. The District Court's de novo review and summary judgment ruling properly were confined to the administrative record.

¶15 Victory claims that even if the District Court properly considered this "alternative" basis for granting summary judgment, there is a material dispute of fact whether Victory produced the records requested by the Commissioner. Victory relies on its letters responding to the Commissioner's requests as evidence that it did not refuse to provide the records. Victory argues that these letters demonstrate at most a refusal to provide the documents in the requested format. For example, in its September 17 letter, Victory said that it "does not use .csv formatting," that the documents sought by the Commissioner were in Clear Spring's possession, and that "Clear Spring should be converting this data and providing this information to the Department."

¶16 Although we view the record in the light most favorable to the party opposing summary judgment, "[m]ere denial, speculation or conclusory assertion, or subjective interpretation of an otherwise clear set of facts are insufficient to raise a genuine issue of material fact under M. R. Civ. P. 56." *House v. U.S. Bank N.A.*, 2021 MT 45, ¶ 14, 403

Mont. 287, 481 P.3d 820 (citations omitted). It is undisputed that Victory did not provide the Commissioner with direct access to the files requested, providing instead PDF files confirming its transfers to third parties and links to view samples of the data transferred. The Commissioner sent multiple letters making clear that it took Victory's responses to its requests to be a continuing refusal to provide access to the data. In Victory's final letter dated October 15, 2021—after the Commissioner initiated administrative proceedings—Victory asked the Commissioner to confirm whether it wanted "Victory to forward all of the data Victory has already transferred to Clear Spring, which includes the claims data that was also sent to . . . Tristar." The Commissioner confirmed that it had yet to receive the data. The above evidence establishes that Victory undisputedly had not produced the requested data as of October 15, 2021. Victory's denials and subjective interpretation of the record are insufficient to establish a genuine issue of material fact. *House*, ¶ 14. The District Court correctly granted summary judgment on this ground.

**Interpretation of § 33-2-1602(4), MCA**

¶17    Section 33-2-1602(4), MCA, provides in relevant part:

> Separate records of business written by the managing general agent must be maintained. The insurer has access to and may copy all accounts and records that are related to its business, in a form usable by the insurer. The commissioner has access to all books, bank accounts, and records of the managing general agent in a form usable to the commissioner.

The Hearing Examiner determined that although "usable" is not defined by statute, "[i]t is apparent from the language . . . that within reason, forms of records usable by the Commissioner would be specified at the time they were requested." In other words, the

Hearing Examiner interpreted § 33-2-1602(4), MCA, to permit the Commissioner to specify what constitutes "a form usable to the commissioner." The District Court did not disturb this conclusion. Victory challenges this interpretation on appeal, arguing that § 33-2-1602(4), MCA, imposes an objective standard that requires managing general agents to produce records that are literally "capable of being used." Victory argues that this objective standard required the Commissioner to prove that it was incapable of using the PDF records provided and that the Commissioner failed to meet this burden.

¶18 When interpreting a statute, the court's role "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. We first look to the statute's plain language, "interpreting the statute as a whole, without isolating specific terms from the context in which they are used by the Legislature." *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003 (internal quotations omitted; citation omitted). We aim to give effect to the statute's purpose. *City of Missoula v. Fox*, 2019 MT 250, ¶ 18, 397 Mont. 388, 450 P.3d 898.

¶19 Victory's interpretation omits § 33-2-1602(4), MCA's, express requirement that records must be "usable *to the commissioner*." (Emphasis added.) Further, the statute provides that insurers must have access to business accounts and records in a "form usable by the insurer." If the Legislature intended to impose an objective standard as Victory suggests, it would have been unnecessary to distinguish a form "usable by the insurer" from a form "usable to the commissioner." Section 33-2-1602(4), MCA. The statute does

10

not impose a burden on the Commissioner to prove that the records were incapable of use. This Court will not insert such a requirement. Section 1-2-101, MCA. We therefore agree with the agency's interpretation that the plain language of § 33-2-1602(4), MCA, requires managing general agents to provide access to their records in a form fit for the Commissioner's use.

¶20 Applying this interpretation to the record, the Commissioner demanded that Victory provide "all books, bank accounts, and records in Victory's possession that relates to its work as a managing general agent for Clear Spring" in .csv files "unless its native format is not conducive to a .csv file." The Commissioner presented evidence that Victory responded by primarily providing PDF files. Victory presented no evidence that it produced records in the Commissioner's requested format. Though it advised the Commissioner that it "does not use .csv formatting," Victory did not explain what its "native format" was or why it was unable to provide the requested formatting. There is therefore no genuine dispute of material fact that Victory violated § 33-2-1602(4), MCA, by failing to produce records in a form usable to the Commissioner.[3] We affirm the District Court's order upholding summary judgment in the Commissioner's favor.

¶21 *2. Did the Commissioner act arbitrarily and capriciously when it ordered Victory to pay the Insurance Code's maximum permitted fine?*

---

[3] This is not to say that the statute mandates a managing general agent to maintain its records in .csv format if the documents and records are maintained in "*a* form usable by the insurer" and "*a* form usable to the commissioner." Section 33-2-1602(4), MCA (emphasis added). The Commissioner recognized this, identifying .csv as the "usable form" for purposes of this demand but adding the qualifier, "*unless* its native format is not conducive to a .csv file." (Emphasis added.) If Victory was not going to produce the records in the "usable form" the Commissioner identified, it was incumbent upon Victory to identify its "native format" and explain why this format was "not conducive to a .csv file."

¶22 In his final agency decision, the Special Deputy Commissioner adopted the Hearing Examiner's rulings that Victory violated the Insurance Code by failing to include two statutorily mandated provisions in its contract with Clear Spring and refusing to provide the Commissioner access to its records in a usable form. The Deputy Commissioner ordered Victory to pay $25,000 for each violation, for a total penalty of $75,000. Victory sought judicial review of the fine, claiming that the Deputy Commissioner arbitrarily and capriciously imposed the maximum fine permitted by the Insurance Code. The District Court affirmed, reasoning that the amount of the fine was "rational and supported by the evidence in the case."

¶23 Victory claims that the fine was arbitrary and capricious because (1) the Deputy Commissioner deviated from the statutory penalty set forth in § 33-2-1605, MCA, and failed to provide adequate justification for doing so, and (2) the record is devoid of evidence that supports the Deputy Commissioner's decision to impose the maximum penalty allowed by the Insurance Code.

¶24 We will not disturb penalties imposed by an agency unless they are "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Section 2-4-704(2)(a)(vi), MCA; *Crismore v. Mont. Bd. of Outfitters*, 2005 MT 109, ¶ 20, 327 Mont. 71, 111 P.3d 681. An agency's decision is arbitrary and capricious if it failed to consider all relevant factors or was based upon a clearly erroneous judgment. *Bitterrooters for Planning, Inc. v. Mont. Dep't of Envtl. Quality*, 2017 MT 222, ¶ 16, 388 Mont. 453, 401 P.3d 712. Reversal is warranted only if the existing record shows

12

that the decision was "random, unreasonable, or seemingly unmotivated." *DeBuff v. Mont. Dep't of Nat. Res. & Conservation*, 2021 MT 68, ¶ 41, 403 Mont. 403, 482 P.3d 1183 (quoting *Cmty. Ass'n for N. Shore Conservation, Inc. v. Flathead Cnty.*, 2019 MT 147, ¶ 28, 396 Mont. 194, 445 P.3d 1195).

¶25 We first address Victory's argument that the fine was arbitrary and capricious because the Commissioner deviated from the penalty authorized by statute. Section 33-2-1605(1)(a), MCA, provides that if a person violates any of the provisions governing managing general agents—including § 33-2-1602(4), MCA—the Commissioner may impose a $5,000 fine per violation. Under that same section, however, the Commissioner retains authority to "impose any other penalty" provided elsewhere in the Insurance Code. Section 33-2-1605(3), MCA. Relevant here, § 33-1-317, MCA, allows the Commissioner to impose fines "not to exceed the sum of $25,000 upon a person found to have violated a provision of this code or regulation promulgated by the commissioner . . . ." Read together, these statutes grant the Commissioner authority to impose fines up to $25,000 on persons who violate § 33-2-1602, MCA. Again, we will not read a limit into the statute that the Legislature did not provide. Section 1-2-101, MCA.

¶26 We next address whether the record supports the Deputy Commissioner's decision to fine Victory $25,000 per violation. The Hearing Examiner found no dispute that Victory and Clear Spring's contract lacked terms required by § 33-2-1602, MCA, and therefore the contract was "on its face, in violation of the law." Regarding Victory's failure to provide records in usable form, the Hearing Examiner found that Victory "refused to provide the

13

data access requested by CSI" and that "[t]o the extent [the files] were produced, some or all files were converted from [.csv] formats to PDF when provided to the Commissioner." The Hearing Examiner remarked that Victory "went out of its way to frustrate the Commissioner's investigation by producing only PDF files," noting that the files' metadata clearly indicated that they were converted from Microsoft Excel spreadsheets. He explained:

> Victory was outright untruthful in its representations to this tribunal as to how the PDF documents were produced, and it easily could have produced the files in the format specified as usable by the Commissioner. Instead, Victory actively took steps to create and produce files in a less usable format.

Special Deputy Commissioner Cochenour adopted the Hearing Examiner's findings in the final agency decision.

¶27 The agency's findings are supported by the record. At oral argument, Victory represented that it produced PDF records because it maintained them in physical form and had to scan the documents to electronically share them. The Hearing Examiner responded, "I can tell you right now, based on [metadata], that these weren't produced from scanning. These were printed to a PDF . . . . These clearly came from something like Excel." Victory's counsel could not explain this inconsistency and replied, "Okay. I don't know."

¶28 The Special Deputy Commissioner's decision demonstrates that the agency considered "relevant factors" before deciding to impose the maximum fine, including that Victory's agreement with Clear Spring was facially illegal, that Victory willfully and actively impeded the Commissioner's investigation, and that Victory misrepresented facts to the Hearing Examiner. *Bitterrooters for Planning, Inc.*, ¶ 16. Victory does not challenge

14

any of the relevant findings as clearly erroneous. The penalty imposed by the Commissioner does not appear to be "random, unreasonable, or seemingly unmotivated" based on the record evidence. *DeBuff*, ¶ 41. We therefore conclude that the fine was not arbitrary or capricious and affirm the District Court.

## CONCLUSION

¶29   The Hearing Examiner and the District Court correctly interpreted and applied § 33-2-1602(4), MCA, to the undisputed facts to award summary judgment to the Commissioner. The Commissioner's decision to impose the maximum fine permitted by the Insurance Code is supported by the record. We affirm the District Court's order on Victory's petition for judicial review.

_____
/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE